## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MARK EUGENE RICKS,** | ) | |
| **ID # 1238188** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:07-CV-1898-M (BH)** |
| | ) | |
| **NATHANIEL QUARTERMAN, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

## I.  BACKGROUND

### A.  Factual History

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 to challenge his conviction for aggravated robbery with a deadly weapon in Cause No. F03-72209.  Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

The Dallas Police Department charged petitioner with aggravated robbery on May 14, 2003, and he was later indicted on those charges by the State. (State Habeas Transcript at 23).  The trial began on May 11, 2004.  (R. 1:cover).  The State called three witnesses to testify:  (1) the complainant, Larry Whitlock; (2) his wife, Elaine Whitlock; and (3) Kenneth Blank, a Dallas Police Department crime scene officer.  (R. 3:14-116).

The complainant testified that he had employed petitioner for a number of years as a contract worker for his satellite and electronics installation business.  On April 20, 2003, the complainant was

working outside his house when petitioner arrived in his van and entered the house. This was not unusual as the men knew each other well, and petitioner lived down the street. (R. 3:15-19). Petitioner then came out holding two knives and a fork and forced the complainant into the house while saying that he was going to kill the complainant and his dog, and that if the police arrived, the complainant was "as good as dead." (R. 3:20-21). Once inside, petitioner ripped the telephone out of the wall, began saying over and over that the complainant owed him $9981 dollars, and attempted to write this amount on the walls with a knife. After forcing the complainant to sit in a chair, petitioner hit him on the head with satellite receivers, slammed him against the wall, hit him on his head, nose, and face with the handle of a screwdriver, and demanded that the complainant write him a check and drive him to cash it. (R. 3:26-33) In the complainant's opinion, petitioner was "on something," and he could smell alcohol on petitioner's breath. The assault ended after about an hour and a half when petitioner began to cry, and the complainant gave him $100.00. (R. 3:22, 35-36). The complainant denied that any third party stopped by his house during the incident, denied that he owed petitioner any money, and denied ever hitting petitioner. (R. 3:64-66, 70).

Afterwards, the complainant called his fiancé from the neighbor's house and went to a hospital, where he was diagnosed with a concussion and received stitches on his head. (R. 3:29, 41, 45). Photographs taken at the hospital of the complainant's injuries were admitted into evidence, as were photographs of the blood on the walls of his house, of the knives, screwdriver, and receivers, and of all of the property that petitioner had broken. (R. 3:38–39, 43-49, 55-56).

The complainant's wife testified that at the time of the incident, she was the complainant's fiancé. He called her after the attack and sounded terrified, stating that petitioner had tried to kill him and insisting that she not call the police. She went to his house, saw him bleeding profusely,

2

called 911, and drove him to the hospital.  Police officers met them at the hospital. (R. 3:79-85).

The crime scene officer testified that he took photographs of the crime scene, including blood stains on the walls, and that he attempted to lift fingerprints from several items.  Petitioner's prints were on a box of wine and on the wooden trim of a door frame where some blood was located. (R. 3:95-111).  No prints were lifted from the satellite receivers. (R. 3:113).

After the trial court denied a motion for "instructed verdict," petitioner took the stand.  (R. 3:117-159).  He testified that he had known the complainant for fourteen years and had worked for him doing installations and sales.  On April 20, 2003, he went to the complainant's house because he believed that the complainant had improperly taken a car from him back in 1998 with a blue book value of $9981.00, and because he had an ongoing dispute with the complainant about material used in jobs.  Petitioner acknowledged that he had drunk ten to twelve beers and was intoxicated. Because of this, he did not remember anything from that night after he got into a fight with the complainant.  (R. 3:121-126, 133).  He did not believe that he had hit the complainant with the receivers because they weighed thirty-five pounds each, and the complainant's injuries would have been more serious.  (R. 3:126-27).  Petitioner did recall that the complainant  hit him first, and he hit back.  When petitioner "came to," he saw the complainant and said "oh God, what have I done?" The complainant then gave petitioner $100.00 because petitioner had told him about financial problems he was having.  (R. 3:127-29).  Petitioner recalled talking to someone who came by, but he never told the complainant that he would be dead if he called the police, and he did not throw a glass of wine in the complainant's face or cut up his credit card as alleged. (R. 3:132).  On cross-examination, petitioner stated that he did not recall threatening the complainant with a knife or screwdriver.  He acknowledged that he might have hit him with a screwdriver, but he did not recall

carving things into the wall. (R. 3:147-49, 157).

The jury retired to deliberate at 5:08 p.m. on May 12, 2004. (S.H.Tr.:26). During deliberations on the morning of May 13, 2004, the court received a note from the jury that they were deadlocked at "11-1". (R. 3:177-78; S.H.Tr.:26). The trial court gave the jury an *Allen*[1] charge, and the jury found petitioner guilty of aggravated robbery at 2:22 p.m. on May 13, 2004. (R. 3:178; S.H.Tr.:26). While the jury deliberated punishment, petitioner opted to have the trial court set punishment after reaching an agreement with the State for a twenty-five year sentence. (S.H.Tr.:24-25). The trial court approved the punishment election and the agreement. *Id.* at 25.

## B. Post-conviction Proceedings

Petitioner did not appeal his conviction or sentence, but he filed a state habeas application for writ of habeas corpus alleging ineffective assistance of counsel and violations of due process on May 11, 2005. (S.H.Tr.:1). He later submitted a brief in support of his habeas application, a supplement to that brief, and an amendment to that brief. (S.H.Tr.Supp.[2]: 2-78). On June 28, 2007, the trial court entered findings of fact and conclusions of law. *Id.* at 97-99. On October 3, 2007, the Court of Criminal Appeals denied the application without written order on findings of the trial court without a hearing. *Ex parte Ricks*, No. 62,445-01, slip op. at 1 (Tex. Crim. App. Oct. 3, 2007).

Petitioner filed his federal petition on October 15, 2007, when he signed and placed it in the prison mail system. (Pet. Writ of Habeas Corpus (Pet.) at 9.[3] Respondent filed an answer on March 26, 2008, and provided the available state court records. On June 24, 2008, petitioner filed a brief

---

[1] *Allen v. United States*, 164 U.S. 492 (1896).

[2] "S.H.Tr.Supp." refers to the supplemental habeas record in *Ex parte Ricks*, No. 62,445-01.

[3] *See also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

in support of his petition and reply.  By order dated July 3, 2008, this Court accepted petitioner's lengthy brief and reply, ordered the state court record to be supplemented with the record of petitioner's trial, and permitted both parties to file amended briefs based on the supplement. Respondent filed a supplemental answer on September 2, 2008, and petitioner filed a supplemental reply on December 24, 2008.

**C.  Substantive Issues**

In his initial petition, petitioner claims that he is being held unlawfully as a result of ineffective assistance of trial counsel as well as various "due process" violations.  (Pet. at 7-8 and additional pages 8.1 through 8.5 (setting out twenty claims of ineffective assistance and eight due process claims).  In his brief in support and reply, petitioner makes additional claims that his trial counsel provided ineffective assistance of counsel.

Respondent concedes that petitioner has sufficiently exhausted his state remedies as to the claims raised in his initial federal petition.  (*See* Answer at 5.)  Respondent argues, however, that petitioner has failed to exhaust his state court remedies with respect to the ineffective assistance claims raised in his brief and reply, and that these claims are procedurally barred.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies to it.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord*

6

*Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ.  The standards in 28 U.S.C. § 2254(d) therefore apply to the claims raised in petitioner's federal petition.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts twenty claims of ineffective assistance of trial counsel in his initial federal petition.  Specifically, he contends that his trial attorney:

–failed to file an appeal on his behalf (claim one);

–failed to properly investigate the case (claim two);

–refused to subpoena or depose witnesses petitioner suggested (claim three);

–failed to follow any trial strategy (claim four);

–displayed misconduct towards petitioner when petitioner sought a continuance (claim five);

–bolstered the accuser's testimony by having him act out part of the assault (claim six);

–failed to raise the issue of petitioner's sanity and allowed petitioner to testify while he was on thorazine (claim seven);

–misled petitioner with regard to sentencing (claim eight);

7

–failed to present petitioner as a "whistle blower;" (claim nine)

–failed to ask for a mistrial after it was "leaked out" the numerical count when the jury was deadlocked (claim ten);

–failed to object when the prosecution insinuated during jury voir dire that petitioner had a prior criminal record (claim eleven);

–repeated comments by prosecution regarding petitioner's prior criminal record (claim twelve);

–failed to object when the prosecutor did not permit him to answer one of her questions during petitioner's testimony (claim thirteen);

–failed to ask the accuser "key" questions (claim fourteen);

–failed to argue the "missing evidence" doctrine with respect to the supposed weapon (satellite receiver) that was missing (claim fifteen);

–failed to ask or demonstrate that the accuser was aiding and abetting petitioner because he knew petitioner's probation officer was looking for him but the accuser did not turn petitioner in, thus showing that the accuser was not of good character (claim sixteen);

–failed to argue that no valuables were taken from the house (claim seventeen);

–failed to argue that no deadly weapon was used (claim eighteen);

–failed to object to a photograph entered into evidence as evidence of a deadly weapon (claim nineteen); and

–failed to request a jury instruction on the lesser-included offense of assault (claim twenty).

In his brief and reply, petitioner additionally argues that trial counsel was ineffective because he:

–failed to object to the prosecution questioning petitioner about his prior DWI convictions (claim twenty-one);

–failed to argue in closing that petitioner did not rob the accuser because the money was offered to him, failed to argue that the photographs were evidence that the accused stole a car from petitioner; and failed to argue that petitioner intentionally broke the accuser's property and did not use it to assault the accused (claim twenty-two); and

–failed to contend that the prosecution failed to turn over exculpatory evidence when it did

8

not produce the actual satellite receivers (claim twenty-three).[4]

To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider

---

[4] Notwithstanding respondent's contention that the claims in the reply and brief are unexhausted, the Court bypasses the procedural issue because the claims are more easily resolved on the merits. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits despite lack of exhaustion); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation, conjecture or conclusory allegations. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

## A.      <u>Failure to File Appeal</u>

Petitioner first contends that he told his trial attorney that he wanted to appeal his conviction, but his trial attorney failed to file an appeal.

At the state habeas level, the trial court relied on a letter that petitioner's trial attorney, John Nation, submitted to the Texas State Bar in response to a grievance filed by petitioner. In his letter, Nation states that petitioner did not fill out a notice of appeal that Nation refused to file. He had petitioner fill out an indigency affidavit/notice of appeal form and sign it after the jury found petitioner guilty, but he did not file it because petitioner did not want him to. Nation further stated that it would have been a simple matter to file the notice, and that the normal practice in Dallas County was to appoint different counsel to represent a defendant on appeal, so Nation had no motive not to file the notice if he had been requested to do so by petitioner. (S.H.Tr.Supp.:34). Based on this letter, the state habeas court found that Nation informed petitioner about his right to appeal, had him sign the form, and told him that he would file the appeal if petitioner changed his mind. The court also found that petitioner told Nation that he did not want to file an appeal and never informed Nation that he wanted to appeal the case. (S.H.Tr.Supp.:97-98). Relief was then denied by the Court of Criminal Appeal based on these findings. (S.H.Tr.:cover). This denial is not an unreasonable application of the *Strickland* standard.

In his brief, petitioner states that it was a confusing time for him.  He believed that he communicated to Mr. Nation his desire not to file an appeal of a pending probation revocation case and his desire not to have Nation as his appellate attorney.  He also states that he was confused about his attorney's explanation of the appeal process, was afraid to anger his attorney, and was sick at the time and had pre-existing mental problems.  Petitioner maintains that the fact that he completed the form given to him by his attorney proves that he intended for an appeal be filed in this case.  The state habeas court based its findings on clear statements made by the trial attorney that petitioner stated that he did not wish to appeal the conviction.  Petitioner's contradictory explanations are not clear and convincing evidence that the state habeas court's findings are erroneous, and therefore they are presumed correct.

Moreover, almost all of the claims petitioner has raised were considered on their merits and determined to be without merit by the state habeas court, and *all* of petitioner's claims have been considered on their merits by this Court.  Petitioner has not shown that he was prejudiced by the failure to file an appeal.  He is not entitled to relief on the basis of this claim.

**B.**   **Presentation of Case**

In his second through fourth claims on ineffective assistance of counsel, petitioner asserts that his trial attorney failed to properly investigate the case, refused to subpoena or depose witnesses suggested by petitioner, and failed to follow any trial strategy.  In his sixth claim, petitioner contends that his attorney erred in having the complainant act out part of his testimony.  In his ninth claim, petitioner asserts that his attorney failed to present him as a whistle blower.  In his fourteenth claim, petitioner argues that counsel erred in failing to ask the complainant certain key questions.  In his sixteenth claim, petitioner asserts that counsel was ineffective for failing to demonstrate that the

complainant had been aiding and abetting petitioner's avoidance of his probation officer.  All of these claims fall under the umbrella of the attorney's choices in presenting the defense case at trial.

At the state habeas level, the trial court found based in part on Nation's letter to the state bar that the only witnesses to the offense were petitioner and the complainant.  Although petitioner told Nation about a neighbor's brother peeking in the window, he did not witness the events.  Proffered testimony by another witness about the complainant's prior acts of misconduct would have been inadmissible.  (S.H.Tr. Supp.:98).  The state habeas court also found that the re-enactment was a matter of trial strategy designed to point out the discrepancies in the complainant's testimony. (S.H.Tr. Supp.:98).  The state habeas court concluded that petitioner was not entitled to relief, and relief was denied by the Court of Criminal Appeals based upon these findings. (S.H.Tr.:cover).  This denial is not an unreasonable application of the *Strickland* standard.

If counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753(5th Cir. 2003), *cert. denied*, 540 U.S.  11865 (2004), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  Moreover, to show prejudice from an alleged failure to investigate, a movant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of the proceeding.  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner states with great specificity what further investigation would have revealed and argues that this information should have been presented to the jury.  He contends that his attorney should have presented evidence that the complainant was in fact guilty of stealing a car from

petitioner, that he engaged in illegal acts in connection with his satellite receiver installation company, and that a person stopped by the house during the "fight" between petitioner and the complainant and saw what occurred.  Petitioner believes that this evidence would have supported his claim that there was a fight, not an aggravated robbery, and that the complainant had a motive to lie about the incident because of his own criminal wrongdoing.  Petitioner also alleges that Nation should have presented evidence that petitioner suffered a mental breakdown during the "fight."  Petitioner has not shown how this investigation and presentation of evidence would have altered the outcome of the trial, however.

First, petitioner testified that at trial that he was intoxicated when he went to confront the complainant about a car he believed had been stolen from him, and for that reason, he did not remember anything that happened that night.  He did remember that the complainant hit him first, however, and he hit back.  After he "came to" and saw the complainant, he said "oh God, what have I done?"  (R. 3:122-28).  Petitioner's own testimony does not support his argument that he had a mental breakdown, but instead reflects that he was drunk.  Defense counsel was not ineffective for pursuing a defensive theory that was not supported by petitioner's own testimony.

As for the assertions that defense counsel should have called witnesses to show that the complainant had in fact stolen from him and committed illegal acts with respect to his business, petitioner must show not only that this testimony would have been favorable, but also that the witness would have, in fact, testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).  Petitioner has shown neither.  He has presented no affidavits from his proposed witnesses setting forth their testimony and willingness to testify and he has not shown that the testimony would have, in fact, been admissible and favorable.

13

The state habeas court found that testimony about the complainant's prior bad acts would have been inadmissible at trial.  Under the Texas Rules of Evidence, specific instances of the conduct of a witness for the purpose of attacking his credibility, except for certain criminal convictions, may not be proven by extrinsic evidence or inquired into on cross-examination. TEX. R. EVID. 608(b).  In federal habeas proceedings, the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Petitioner has not shown that his attorney was ineffective for failing to present inadmissible evidence.  With respect to testimony from a supposed third witness to the incident, petitioner did not and does not allege that this person was present for everything that occurred.  Without an affidavit from this person confirming petitioner's claim, there is no evidence that this person's testimony would have, in fact, been helpful.  Counsel was therefore not ineffective for failing to further investigate these witnesses, present these witnesses, utilize this alleged testimony as a trial strategy or as a method of presenting petitioner as a "whistle blower" against the complainant's misdeeds, or question the complainant on these issues.

Petitioner also contends that his attorney provided ineffective assistance for having the complainant demonstrate petitioner's alleged acts because petitioner believed it placed him in a bad light.  However, the state habeas court found that this was a matter of trial strategy to point out the discrepancies in the complainant's testimony. (S.H.Tr.Supp.:98).  Petitioner has failed to show that this trial strategy was so poorly chosen as to render his trial obviously unfair.  The record reveals that after defense counsel asked the complainant to re-enact petitioner hitting him with the receivers, he questioned him about the fact that he did not have to spend the night in the hospital and that his skull was not fractured. (R. 3:75-76).  Counsel then argued in his closing statement that petitioner

14

could not have hit the complainant with the receivers as he testified, because he would have had greater injuries. (R. 3:164-70).  As this was the same argument petitioner made in his own testimony, counsel cannot be considered ineffective for choosing to highlight this portion of the complainant's testimony.

Finally, petitioner contends that his attorney was ineffective for failing to demonstrate that the complainant had previously "aided and abetted" petitioner by not informing petitioner's probation officer of his location.  Petitioner asserts that this would demonstrate that the complainant was of bad character.  It is not clear how questioning the complainant about his knowledge of petitioner trying to previously avoid his probation officer would be of *benefit* to petitioner, as it would reveal that petitioner was, in fact, on probation *and* was attempting to circumvent the law. Counsel was not ineffective for not pursuing this line of questioning.  *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997) (noting that a failure to present evidence at trial does not constitute "deficient performance" under the *Strickland* standard if counsel could have concluded, for tactical reasons, that presenting such evidence would be unwise).  Petitioner is not entitled to relief on the basis of these seven claims of ineffective assistance of counsel.

### C.      Counsel's Behavior during Pretrial Hearing

In his fifth claim, petitioner argues that his trial counsel was ineffective based on misconduct during a pretrial hearing.  Specifically, petitioner asserts that his attorney yelled at him, stating that "he don't know what the hell we're talking about" (brief at 18) and slammed papers down on the desk and did not allow him to speak when petitioner sought a ten-day continuance after the indictment was amended.  Petitioner also claims that his attorney told him to "play ball" because the attorneys were the professionals there.

The record from the pretrial hearing reflects that after petitioner pled not guilty and his attorney addressed some pretrial motions, one of the prosecutors informed the trial judge that the State had amended the indictment the previous week.  He stated that he did not believe that petitioner had received his "ten days" with respect to the amendment, and he wanted to know if the defense planned on waiving the notice.  (R. 2:8).  Defense counsel responded that it was his intent to waive because the only change was the allegation that a satellite receiver was used to commit bodily injury rather than a VCR, and this change did not impact the case.  Defense counsel stated that the defense had no objection to the amendment.  (R. 2:8).  The trial judge then asked petitioner whether he understood that the indictment was amended and that he had ten days after the indictment was amended to prepare for trial, which meant that he could have two additional days.  (R. 2:8-9).  When petitioner expressed some confusion over the matter, defense counsel explained the law to him on the record.  After petitioner stated that a continuance would be in his benefit, defense counsel disagreed but stated that petitioner could have the continuance if he wanted it. (R. 2:9).  Defense counsel and petitioner then had a discussion off the record, after which the trial judge asked petitioner if he wanted a continuance of two days.  Petitioner responded that he did not, and that he was waiving this right and was prepared to go to trial. (R. 2:10).

The record does not support petitioner's allegation that defense counsel either cursed at him or did not allow him to speak during the pre-trial hearing.  The state court's denial of this claim is neither an unreasonable application of the *Strickland* standard nor contrary to federal law.  Petitioner is not entitled to relief on the basis of this claim.[5]

---

[5]  Petitioner also alleges in this claim for relief that trial counsel engaged in misconduct and was therefore ineffective because Nation's letter to the state bar says that petitioner essentially conceded his guilt prior to trial. Petitioner contends that counsel could not ethically fulfill his obligations as his attorney due to his belief that petitioner was guilty.  While petitioner cites to the rules of professional responsibility, he cites to no rule supporting his contention.

D.      **Insanity Defense**

In his seventh claim, petitioner asserts that counsel was ineffective for failing to raise the issue of petitioner's sanity and for permitting petitioner to testify while he was under the influence of a prescription drug.  In particular, petitioner alleges that an insanity defense was a possibility because he told Nation that he "flipped out," Nation acknowledged that much of petitioner's communication with him was rambling and incoherent, petitioner told the court psychiatrist that he had "flipped out," even his accuser stated that he believed that petitioner was on drugs, and petitioner said "oh God, what have I done?".  Petitioner also states that there were many witnesses to the stress he was under prior to the incident.  (Brief at 25-26).  He now claims that he was not drunk at the time of the incident because he could handle the amount of beer he drank very well.  (Brief at 26).  Petitioner also contends that his counsel was ineffective for advising him to testify while he was on anti-depressants and Thorazine, and that because of the medication, he was impaired and unprepared and therefore testified that he did not remember many events.

In his letter to the state bar, Nation states that he had petitioner examined by a psychiatrist before trial who concluded that petitioner was suffering from depression but was otherwise competent to stand trial. (S.H.Tr.Supp.:33).  He further states that there was no evidence available to him that petitioner was either incompetent to stand trial or was legally insane at the time of the offense. *Id*.  The state habeas court found that petitioner was found competent to stand trial, was competent when he testified, and ably presented his version of events to the jury. (S.H.Tr.Supp.:98). Relief was denied on the basis of these findings, and this denial is not an unreasonable application of the *Strickland* standard.

Under state law, it is an affirmative defense to prosecution that at the time of the conduct

charged, a defendant, as a result of a severe mental disease or defect, did not know that his conduct was wrong. *See* TEX. PENAL CODE ANN. § 8.01(a) (Vernon 1973). Petitioner has not shown that any such evidence was in existence. His statements to his attorney, the psychiatrist, and others that he "flipped out" and was under a lot of stress is not evidence that he suffers from a severe mental disease or defect such that he did not know that his conduct was wrong. Defense counsel was not ineffective for failing to raise an insanity defense. *See Byrne v. Butler*, 845 F.2d 501, 513 (5th Cir. 1988) (holding that counsel is not ineffective for failing to raise insanity as a defense where the record did not reflect that there was any indication or evidence presented or evident to the attorney that this was a viable defense). Moreover, to the extent that petitioner points to the complainant's testimony that petitioner was "on something" as evidence that he was insane, under Texas law, "[v]oluntary intoxication does not constitute a defense to the commission of a crime." *See* TEX. PENAL CODE ANN. § 8.04(a) (Vernon 2003). Counsel was not ineffective in this respect.

With regard to petitioner's claim that his counsel was ineffective for advising him to testify, petitioner stated on the record his understanding of his right to testify and his own specific desire to testify on his own behalf, even after his attorney explained the advantages and disadvantages of testifying. (R. 3:118-20). While petitioner claims that the medicine that he was at the time of trial on prevented him from remembering the details of the incident, at trial he testified that he did not remember because he "blacked out" during the incident and did not awaken until the end. The record does not support petitioner's contention that his attorney should have been aware that he was not competent to testify.

Moreover, petitioner has failed to show any prejudice. Petitioner claimed his innocence. Despite his claims to the contrary in his state and federal petition, the only person who could testify

to this was petitioner himself.  Petitioner exercised his constitutional right to testify, and defense counsel was not ineffective for failing to advise him otherwise.[6]  Petitioner has not shown that had he been advised not to testify and chosen not to do so, there is a reasonable probability that he would not have been convicted because the jury would then have never heard his version of events at all. Petitioner is entitled to no relief on the basis of this claim.

**E.**     **Advise Regarding Sentencing**

In his eighth claim, petitioner contends that his trial counsel was ineffective for failing to advise him appropriately regarding sentencing.  In particular, petitioner alleges that Nation told him that the trial court would give him a forty-five year sentence, that he was not informed that if the jury deadlocked he could receive a new jury, and that he opted to accept a plea bargain for a twenty-five year sentence based on counsel's statement about what the trial judge would assess.

In his letter to the state bar, Nation states that before the jury entered the courtroom for final deliberations on punishment, petitioner asked him if he thought that the jury would assess penitentiary time.  Nation responded that he was certain it would because petitioner was not eligible to receive probation.  Petitioner then asked Nation whether some jurors who wanted a maximum sentence and those who wanted a less severe sentence would compromise, and Nation responded that it was possible that the jurors would compromise on a sentence between thirty-five and fifty years, although it was difficult to predict.  He also stated that based on his experience, the judge would assess a thirty-five year sentence.  Petitioner then said that he wanted to accept a twenty-five

---

[6] To the extent that petitioner is arguing that he was incompetent to stand trial, the Supreme Court has stated that the appropriate test is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).  Before a federal habeas court has any duty to investigate a claim of incompetency, a petitioner must present sufficient facts that positively establish a legitimate doubt regarding the petitioner's ability to meaningfully participate and cooperate with counsel during trial. *Washington v. Johnson*, 90 F.3d 945, 950 (5th Cir. 1996).  Petitioner has not met this burden.

year sentence and "get on with his life."  After pointing out that the jury could assess a relatively moderate sentence, reminding petitioner that he would have to serve half of the sentence for becoming eligible for parole, and confirming that petitioner understood these things, Nation conferred with the prosecutors.  Despite initial reluctance on their part, they agreed to a twenty-five year sentence for the aggravated robbery and eight years for a pending felony probation violation. (S.H.Tr.Supp:33-35).

The state habeas court found Nation to be trustworthy, found that his letter sufficiently responded to the issues raised in the state application, and recommended that relief be denied. (S.H.Tr.Supp.:97, 99).  Petitioner has not shown that this is an unreasonable application of the *Strickland* standard.  Petitioner has not shown a reasonable probability that had he not spoken to Nation and agreed to a twenty-five year sentence, he would have received a lesser sentence from the jury.  There is no evidence that this jury would have deadlocked on punishment.  Petitioner received a sentence at the lower end of the 5 to 99 year range, especially given the nature of the crime of which he was convicted and the number of prior offenses presented as evidence at punishment and to which petitioner stipulated (four DWI convictions, one of which was a felony, a possession of marijuana conviction, and a felony possession of a controlled substance). (R. 3:180-82).  Without a showing that his sentence would have been less harsh had he not accepted a plea bargain, petitioner has failed to establish prejudice.  *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993) (holding that, when a petitioner challenges counsel's actions during the punishment phase, in order for relief to be warranted, there must be a reasonable probability that, but for counsel's alleged errors, the petitioner's non-capital sentence would have been significantly less harsh).  Petitioner is entitled to no relief on the basis of this claim.

## F.      Failures to Object or Request Mistrial

In his tenth, eleventh, twelfth, thirteenth, fifteenth, nineteenth, and twenty-first claims for relief, petitioner asserts that counsel was ineffective by either failing to object in certain instances, repeating objectionable information himself, or failing to request a mistrial.  The state habeas court denied all but one of these claims on their merits, and this denial is not contrary to federal law.

With regard to petitioner's claim that counsel should have requested a mistrial when it was somehow "leaked out" that the jury was deadlocked 11-1, the jury foreman stated it in his note to the trial court, and the court then advised the attorneys of the note.  (Add'l State Court Records at 29[7]).  Petitioner has not shown that a motion for mistrial was either meritorious or that it would have been granted on the basis that the jury informed the judge about the jury count when it was deadlocked.  Counsel was not ineffective for failing to make a specious motion.

With regard to petitioner's eleventh and twelfth claims that counsel was ineffective for failing to object when the prosecution insinuated during voir dire that petitioner had a prior criminal record and then repeating the prosecutions's comments regarding petitioner's prior criminal record, no prosecution references to petitioner's prior criminal record or repetition by defense counsel appears in the record.  Petitioner has failed to establish ineffective assistance of counsel on this basis.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations do not raise a constitutional issue in federal habeas proceeding).[8]

---

[7]  Because no direct appeal was filed in this case, no clerk's record or transcript was created.  Respondent has therefore filed additional state court records that would have been included in a transcript, including the indictment, the jury instructions, and the notes from the jury.

[8]  Petitioner also references statements made during voir dire about capital and non-capital sentences and their sentence ranges. The only instance in the record of the voir dire where the prosecutor refers to a capital crime and death sentence is when the prosecutor states that aggravated robbery does not require that someone be killed, as a death in the course of an aggravated robbery would be a capital murder case where someone could face the death penalty. (R. 2:60). Petitioner has not shown that this was an objectionable statement; it was a statement of fact.  While defense counsel did reference the range of punishment for this case as being 5 to 99 years in an effort to insure that the potential jurors could

With regard to petitioner's thirteenth claim that counsel was ineffective for failing to object when the prosecutor did not permit him to answer her last question during cross-examination, petitioner was permitted to testify in full during defense counsel's direct and re-direct examination. Petitioner has shown neither that such an objection would have been sustained, nor that there is a reasonable probability that he would not have been convicted if it had been sustained. Petitioner has therefore failed to meet the *Strickland* standard.

In his fifteenth claim, petitioner asserts that counsel was ineffective for failing to object that the prosecution was violating the "missing evidence" doctrine with respect to the supposed weapon (satellite receiver) that was never placed into evidence. He appears to be referring to the "spoliation doctrine," a general principle of *civil* litigation which provides that upon a showing of intentional destruction by an opposing party, an inference arises that the missing evidence was adverse to the party's position. *See* 2 McCormick On Evid. § 265 (6th ed. 2006). However, even under this civil doctrine, it must be shown that the destruction was made in bad faith, not that it was negligent, and it must be attributable to the party itself. *Id*. at 825. Petitioner has failed to show that this doctrine is applicable in criminal cases, that the evidence was in fact disposed of, that the State was involved in any destruction, and that any alleged destruction by the State was done in bad faith. The failure to make meritless objections does not constitute deficient performance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

Petitioner argues in his nineteenth claim that his trial counsel was ineffective for failing to object to the prosecution using photographs of the satellite receiver as proof that it is a deadly weapon. He has pointed to no applicable Texas criminal case law stating that photographs of an

---

consider the full range of punishment (R. 2:97), petitioner has again failed to show that this statement of fact was an objectionable statement.

object are not admissible evidence, however.  Moreover, petitioner himself testified that the satellite receivers weigh thirty-five pounds and would inflict serious bodily injury on someone who was hit with one. (R. 3:127).  He therefore tacitly acknowledged that they could become deadly weapons. Petitioner instead denied that he had ever hit the complainant with the receivers and stated that the complainant would not be at trial had petitioner hit him with one of them because the receivers are so heavy.  *Id.*  Defense counsel was not ineffective for making a meritless objection to the photographs of the receivers placed into evidence.

Finally, petitioner's twenty-first claim is that his attorney was ineffective for failing to object to the State impeaching him with prior DWI convictions because these convictions were misdemeanors and were not crimes involving moral turpitude.  The record of the trial reveals that the prosecutor only questioned petitioner about two prior felony convictions–a felony drug conviction and a felony DWI conviction. (R. 3:154-56).  Under the Texas Rules of Evidence, a witness' credibility may be attacked by evidence that the witness has been convicted of either a felony or a crime that involves moral turpitude. *See* Tex. R. Evid. 609(a).  Defense counsel was therefore not ineffective for failing to object on this basis.  Petitioner is not entitled to relief on the basis of these claims.

## G.   Failure to Argue

In his seventeenth, eighteenth, and twenty-second claims, petitioner alleges that his trial counsel was ineffective for failing to make several arguments during his closing statement, including that: 1) petitioner did not rob the complainant because there were valuables still in the house; 2) no deadly weapon was used; 3) there was no robbery because the complainant offered the money to petitioner; 4) the photographs of numbers etched in the walls were evidence that the complainant

owed petitioner money because he had stolen a car from petitioner; and 5) petitioner intentionally broke the complainant's property but did not use it to assault him. Most of these claims were denied on their merits at the state level, and this denial is not contrary to federal law.

During his closing argument at the guilt phase of the trial, defense counsel argued that: 1) the State has the burden of proof even if the jury disbelieved petitioner's testimony; 2) the State never processed the knives alleged to have been brandished by petitioner for fingerprints; 3) no fingerprints were found on the screwdriver; 4) no fingerprints were found on the satellite receivers; 5) the complainant had a smug demeanor towards the defense attorney for no reason; 6) it was not believable that the complainant was hit over the head with 35-pound satellite receivers numerous times but did not have more injuries and therefore the complainant was lying; 7) if the complainant's testimony was questionable on one issue, it lacked credibility in other areas; 8) petitioner did not appear like a violent person on the witness stand; and 9) the complainant did not call the police immediately after the alleged robbery and refused the use of an ambulance, again calling into question his credibility regarding the nature of the incident. (R. 3:164-70).

The record reveals that defense counsel did attack the complainant's credibility. He substantially covered several of the arguments petitioner alleges that he was ineffective for failing to make. In considering whether a closing statement constituted ineffective assistance of counsel, an appellate court should look at the closing statements in their entirety. *Carter v. Johnson*, 131 F.3d 452, 466 (5th Cir. 1997). Based on the closing statement in its entirety, it cannot be said that defense counsel was ineffective, and petitioner is not entitled to relief on the basis of this claim.

**H.**     **Failure to Request a Lesser Included Offense Instruction**

In his twentieth claim, petitioner asserts that his trial counsel was ineffective for failing to

request that the jury be instructed on the lesser-included offenses of theft and robbery.

Texas courts apply a two-part test to determine entitlement to such an instruction.  *See Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993) (en banc).  "[F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense."  *Id.* at 673; *accord* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981) (defining lesser included defense).

Here, petitioner testified at trial that while he could not remember much of what happened that night because he was drunk, he did not rob the complaint, and the complainant willingly gave him $100.00 after they fought and petitioner explained the financial problems he was having.  (R. 3:122-29).  The complainant testified that petitioner robbed him because in the course of committing the theft of $100.00, petitioner caused bodily injury to him and used or exhibited deadly weapons, including knives, a screwdriver, and heavy satellite receivers.  (R. 3:19-37).  This testimony supports the charge in the indictment that petitioner was guilty of aggravated robbery, the definition of which was also set forth in the jury instructions. (Add'l S.C.R.:12-13).  There was no evidence presented at trial from any source that if petitioner was guilty, he was guilty of *only* theft or robbery.  Counsel was not ineffective for failing to request that the jury be instructed on these lesser-included offenses. This claim was denied on its merits at the state level, and that denial is not contrary to federal law.

I.   **Failure to Raise Brady Claim**

In his twenty-third claim, he argues that his attorney was ineffective for failing to argue at trial that the State had failed to turn over exculpatory evidence by failing to produce the satellite receivers allegedly used by petitioner to assault the complainant.

25

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression of evidence favorable to the accused and material to either guilt or punishment by the State violates a defendant's due process rights under the federal constitutional.  The prosecution has the duty to turn over to the defense both exculpatory and impeachment evidence, whether or not it was requested by the defense.  *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985).  Such evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  A reasonable probability of a different result is shown when the suppression of evidence undermines confidence in the verdict.  *Bagley*, 473 U.S. at 678; *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998).

The defense was aware that the State intended to prove that the receivers were used as a deadly weapon by petitioner, and photographs of the receivers taken hours after the incident occurred by a crime scene officer were presented by the State, shown to defense counsel, and placed into evidence.  Petitioner has failed to establish any *Brady* violation or any ineffective assistance of counsel for failure to raise the issue.

In conclusion, petitioner has asserted no claim of ineffective assistance of counsel that entitles him to federal habeas relief.

## IV.  OTHER CLAIMS

In his initial petition, petitioner also asserts several additional claims that he labels as "due process" claims.  In particular, petitioner contends that:

–his due process rights were violated because the jury count was revealed during deliberations after the jury sent the judge a note stating that the jurors were deadlocked;

–his due process rights were violated because the trial judge used coercive language during the trial and in the *Allen* charge she gave to the jury;

26

–his free speech rights were violated when his attorney yelled at him during a pretrial hearing;

–his right to have ten days notice after the indictment against him was amended was violated;

–his right to a speedy trial was violated;

–his rights to equal protection were violated because the police and district attorney's office refused to investigate his claims that the accuser had violated several laws;

–the trial judge erred when she refused to instruct the jury on lesser-included offenses; and

–the trial judge failed to protect his free speech rights when he was not permitted to finish his answer to a question from the prosecutor.

These claims were denied on their merits by the Court of Criminal Appeals. (S.H.Tr.:cover). This decision denying relief is not contrary to federal law.

## A.  **Jury Deadlock**

Petitioner first asserts that his due process rights were violated when it was revealed at the guilt phase of the trial that the jury was deadlocked with a vote of 11-1. As noted earlier, the jury foreman advised the trial judge of the deadlock by note. Petitioner has cited to no case law supporting his claim that this violated his due process rights and he has shown no entitlement to relief on the basis of this claim.

## B.  **Trial Court's Conduct and Allen Charge**

Petitioner next contends that the trial court used coercive language both in its instructions to the jurors before the jury deliberated at the guilt phase of the trial and within the *Allen* charge given to the jury after the foreman advised that they were deadlocked. In particular, petitioner contends that the trial judge mentioned jurors being able to see their families if they reached a verdict, made comments that the deliberations would not take long because the defense did not present any witnesses, referred to the cost of a new trial and the busy docket in the *Allen* charge,

urged the jury to consider outside influences, and referenced petitioner as being a threat to the jurors' safety. Notably, petitioner has cited to no place in the record , and this Court can locate no instance, in either general statements or in jury instructions, including the *Allen* charge, where the trial judge made any of these statements or anything even similar to these statements.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). Petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

"A trial judge's comments . . . are placed in the proper context by viewing the 'totality of the circumstances, considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions.'" *United States v. Saenz*, 134 F.3d 697, 702 (5th Cir. 1998) (quoting *United States v. Lance,* 853 F.2d 1177, 1182 (5th Cir. 1988)).

> To rise to the level of constitutional error, the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor. The judge's intervention in the proceedings must be quantitatively and qualitatively substantial to meet this test.

28

*United States v. Bermea,* 30 F.3d 1539, 1569 (5th Cir. 1994) (citations omitted).   A proper instruction to the jury is generally sufficient to cure an innocent misstatement by a trial judge to the jury.  *See United States v. Saenz*, 134 F.3d 697, 713 (5th Cir. 1998); *United States v. Buchanan,* 585 F.2d 100, 102 (5th Cir. 1978).   "Only when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial."  *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979).

With respect to the *Allen* charge, in the habeas context, a petitioner must establish that the court's charge under the totality of the circumstances was so coercive as to have unconstitutionally rendered the petitioner's trial fundamentally unfair.  *Montoya v. Scott,* 65 F.3d 405, 409 (5th Cir. 1995).  In *Boyd v. Scott*, 45 F.3d 876,882-84 (5th Cir. 1994), the Fifth Circuit held that a habeas petitioner was not entitled to relief based on a claim that an *Allen* was unconstitutionally coercive such as to render a trial fundamentally unfair where the charge instructed the members in the minority of the jury's vote to reconsider the majority's opinion in an attempt to reach a decision and instructed the jury that the decision would be made by a jury, and "you are that jury."  Likewise, in *Bryan v. Wainwright*, 511 F.2d 644, 645 (5th Cir. 1975), the Fifth Circuit denied relief where the trial judge *sua sponte* called the jury back into the courtroom and gave an *Allen* charge and a twenty-minute deadline to see if the jury could reach a verdict.

In this case, the *Allen* charge given by the trial judge to the jury in petitioner's case was far less "egregious" than the charges in either *Boyd* or *Bryan*, as the trial judge in petitioner's case instructed the jurors that: 1) should they fail to reach a verdict, the case would most likely be heard by another jury that would hear the same evidence and answer the same questions; 2) there was no reason to believe that another jury would be any better qualified to make the decision; 3) it was their

duty, as jurors, to consult and deliberate with one another to reach an agreement, so long as it can be done without "violence" to individual judgment; and 4) while each juror must decide the case for themselves, they should not hesitate to reexamine their views and change their opinions if convinced that another view is better. (Add'l S.C.R.:27-8).  As the language in this charge is inherently less coercive that language used in cases where the Fifth Circuit has declined to grant relief, petitioner is not entitled to relief on the basis of this claim.

C.    **Free Speech Rights**

Petitioner further contends that his free speech rights were violated when his attorney yelled at him during a pretrial hearing, and that the trial judge failed to protect his free speech rights when he was not permitted to finish his answer to a question from the prosecutor.

As noted earlier, the record from the trial does not support petitioner's contention that his attorney yelled at him during a pre-trial hearing.  The prosecutor ended her questions to petitioner and passed him as a witness after he failed to respond to her last question, permitting defense counsel to re-direct.  Petitioner has cited to no case law supporting his bare assertion that his constitutional right to free speech was violated in either of these instances.  Conclusory allegations are insufficient to obtain habeas relief.  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations do not raise a constitutional issue in federal habeas proceeding).  Petitioner is  entitled to no relief on this claim.

D.    **Indictment Amendment**

Petitioner next contends that his right to have ten days' notice after the indictment was amended was violated.  As noted earlier, the State amended its indictment against petitioner to allege that petitioner caused bodily injury to the complainant by striking him with satellite receiver rather

than a video cassette recorder.  Although petitioner waived his right to have the full ten-day notice of this amendment as permitted under state law during a pretrial hearing, (R. 2:9-10), he essentially claims that his waiver was not valid.

Whether the trial court should allow an indictment to be amended and whether the defendant should have additional time to respond to an amended indictment are matters of state law.  *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) (recognizing that federal guarantee of indictment by a grand jury has not been applied to the states).  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law.  *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Accordingly, petitioner is not entitled to federal habeas review on the basis of this claim.

E.   **Right to Speedy Trial**

Petitioner next contends that his right to a speedy trial was violated.

In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court identified four factors to be considered in determining whether a defendant's constitutional right to a speedy trial under the Sixth Amendment has been violated:  1) the length of the delay;  2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant.  The first factor acts as a triggering mechanism that requires a court to examine the other factors.  *Id*.  The Fifth Circuit has held that, generally speaking, a delay of one year after indictment is a presumptively prejudicial delay that triggers a speedy trial analysis under *Barker*.  *See United States v. Lucien*, 61 F.3d 366,

372 (5th Cir. 1995); *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993).  As for the third factor,

the Supreme Court emphasized that the failure of a defendant to assert his speedy trial right will

make it difficult for him to prove that he was denied this right.  *Barker*, 407 U.S.  at 532.  The court

also identified three interests of the defendant to be assessed in determining prejudice – to prevent

oppressive pre-trial incarceration, to minimize anxiety and concern, and to limit the possibility that

the defense will be impaired.  *Id.*

     In this case, the Dallas Police Department charged petitioner with aggravated robbery on

May 14, 2003, and he was indicted after that date.  (S.H.Tr.:23, 24).[9]  Petitioner's trial began on May

11, 2004, and concluded on May 13, 2004.  Because petitioner's trial began and ended within one

year after the indictment against petitioner was handed down, the delay in petitioner's case does not

generally trigger a speedy trial analysis under *Barker*.  61 F.3d at 372.  Notably, petitioner did not

assert this right until after he was tried and convicted, and he has not shown any prejudice as a result

of the delay.  Petitioner has failed to establish that he is entitled to relief on the basis of this claim.

**F.**    **Equal Protection**

     Petitioner next contends that his Equal Protection rights have been violated because

authorities, such as the Dallas Police Department, the Dallas Sheriff's Department, and the Dallas

District Attorney's office, have refused to investigate crimes committed against him by the

complainant, such as stealing his car and "extorting" him with unscrupulous business practices.

     The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

"deny to any person within its jurisdiction the equal protection of the laws," which is essentially a

---

[9]  The copy of the indictment contained in the state habeas court records does not include the original file mark, but the trial docket indicates that the case was filed on June 18, 2003.  Regardless, petitioner was clearly not indicted any earlier than the date on which the Dallas Police Department filed charges against him, as shown on the face of the indictment.

32

direction that all persons similarly situated should be treated alike.  *See Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir.) (holding that "[t]he equal protection clause requires that all persons similarly situated be treated alike"), *cert. denied*, 534 U.S. 820 (2001).  "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons."  *Romer v. Evans*, 517 U.S. 620, 631 (1996).  Thus, "a party who wishes to make out an Equal Protection claim must prove "the existence of purposeful discrimination" motivating the state action which caused the complained-of injury."  *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).

Petitioner has failed to prove the existence of purposeful discrimination behind the decision not to prosecute the complainant after petitioner complained of his actions.  Petitioner has also alleged nothing to indicate that he has been treated differently from those situated similarly – the crux of an equal protection claim.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  This claim is therefore without merit.

## G.   **Lesser-Included Offense Instruction**

Finally, petitioner asserts that his constitutional rights were violated because the trial court did not instruct the jury on the lesser-included offenses of theft and robbery.  As noted earlier, however, petitioner was not entitled to have the jury instructed on these lesser offenses, and he is therefore not entitled to relief on this basis.

## V.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

33

## VI.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 28th day of May, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE